OPINION
Defendant Renaldo Harrell appeals a judgment of the Court of Common Pleas of Delaware County, Ohio, convicting and sentencing him for one count of burglary in violation of R.C. 2911.12 (A)(4), after a jury found him guilty. Appellant had been charged with burglary in violation of R.C. 2911.12 (A)(1) and gross sexual imposition in violation of R.C.2907.05, but the jury found him guilty of a lesser included offense of burglary and not guilty of gross sexual imposition. Appellant assigns three errors to the trial court:
 ASSIGNMENTS OF ERROR I. THE TRIAL COURT ERRED IN NOT SUPPRESSING THE STATEMENTS OF THE APPELLANT.
 II. THE TRIAL COURT ERRED IN NOT GRANTING APPELLANTS MOTION FOR AQUITTAL UNDER OHIO CRIMINAL PROCEDURE RULE 29.
III. THE JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
At trial, the State presented evidence appellant went to the home of Tonya Bauder, on December 12, 1999. He introduced himself as "Shawn" and asked for Bauder's boyfriend. Bauder told Shawn her boyfriend was not there and she didn't know when he would be back. The person left but came back five or ten minutes later to leave his telephone number. The man then returned approximately ten to fifteen minutes later, asking to use Bauder's telephone. Bauder permitted him to do so, but made him stay on the porch. Bauder testified she never permitted the man to come into her home. Stacie Johnson, Bauder's friend, testified she also saw this man and he was black, with short hair and something wrong with one side of his face. Bauder testified after Johnson left, she turned off the lights and lay down on the couch. The front door was closed, but Bauder did not lock it. She had taken off her sweater, and had on a bra and blue jeans, with a blanket completely covering her. Bauder testified she was asleep when she felt someone's hand rubbing her breasts, which woke her up. She assumed it was her boyfriend, and asked him what he was doing. When the person did not respond, Bauder got up and turned on the living room light, and saw the man who touched her was Shawn, the man who had come to the door three times that night. Bauder testified she screamed and grabbed the telephone to dial 911. Shawn briefly tried to grab the phone, and then ran out of the door. When the police arrived, Bauder testified she gave a description of her attacker, as being about 5' 7", and 170 pounds, wearing blue jeans and a blue coat with red lining and with something wrong with one of his eyes. Bauder gave the police the name Shawn, and the telephone number Shawn had given Bauder. Bauder testified she had a few cuts on her arm from when she and Shawn struggled over the phone. Bauder identified appellant in court as the man who had attacked her.
 I
Appellant moved the court to suppress statements he made to investigating officers the night of the incident. At the suppression hearing, Officer Brian Schwartz, of the Delaware City Police Department testified he investigated the call from Bauder. The officer testified he gave the dispatcher the phone number Bauder provided him, and it came back with an address approximately two blocks directly north of Bauder's home, on the same street. Schwartz and two other officers went to the address provided by the dispatcher, and knocked on the door. Appellant answered the door, and the officers advised him they wanted to speak to him with reference to an incident that occurred up the street. Appellant invited the officers in and told them he could explain what happened at that residence earlier in the morning. Appellant admitted he had been to Bauder's residence. Appellant identified himself as Renaldo Harrell, but also indicated a lot of his friends called him Shawn. The officer testified he was not under arrest, and was not physically restrained. The discussion took place in appellant's residence after he had invited the officers into the home and indicated he wished to speak to them. The officers did not advise appellant of his Miranda rights. The officers observed a blue jacket with a red lining hanging up inside the foyer where the officers spoke to appellant. Appellant admitted wearing that coat earlier in the evening. The officer then arrested appellant for burglary and took him to the police department. The officers admitted at the time they went to appellant's residence, they had a description of the perpetrator which matched appellant, and his name, telephone number, and address. The officer testified two officers went to the front door, while an officer went to the back door as well. The officer admitted immediately seeing a jacket which matched the witness' description, when he entered the foyer. Nevertheless, the officer stated appellant was not the focus of the investigation when he made the statements. The trial court found the statements appellant made at his residence were not the product of interrogation, but were voluntary. The trial court overruled appellant's motion to suppress. Appellant urges the trial court was incorrect when it found he was not in custody at the time he made the statements. A duty to administer the Miranda warnings arises only when an accused is taken into custody, see Miranda v. Arizona (1966), 384 U.S. 436. The Ohio Supreme Court has defined custody as a formal arrest or restraint on the freedom of movement to the degree associated with a formal arrest, State v. Mason (1998), 82 Ohio St.3d 144, citations deleted. To determine whether a person was in custody, the court should apply a totality of circumstances test, including where the interrogation occurred, whether the investigation had focused on the subject, whether the objective indicia of arrest were present, and the length of the questioning involved, Stansbury v. California (1994), 511 U.S. 318. The trial court must resolve how a reasonable person in the accused's position would have perceived the situation, see Berkemer v. McCarty (1984), 468 U.S. 420. The State urges because the interrogation took place in appellant's home, over a short period of time, and with no indicia of arrest, a reasonable person would not consider himself to be in custody. The State points out appellant was 29 years old, and had prior involvement with the legal system. The State also points out he was not physically deprived or threatened in any way. We have reviewed the record, and we find the trial court correctly found appellant was not in custody, and voluntarily made the statements at issue. Accordingly, the trial court did not err in overruling the motion to suppress. The first assignment of error is overruled.
 II
In his second assignment of error, appellant urges the trial court erred in not sustaining his motion for acquittal based on Crim.R. 29. The test a trial court should apply was stated in State v. Bridgeman (1978),55 Ohio St.2d 261. Pursuant to the Bridgeman rule, a trial court should not enter an acquittal if the evidence is such that reasonable minds could differ as to whether the State had proved each material element of the crime beyond a reasonable doubt. Appellant was indicted for burglary, which requires the State to prove he trespassed by force, stealth, or deception in an occupied structure with the purpose to commit a criminal offense. Appellant was also charged with gross sexual imposition, which prohibits a person from having sexual contact with another not his spouse, when the offender purposely compels the other person to submit by force or threat of force. Appellant urges the State introduced no evidence of force or the threat of force and for this reason, the trial court should have acquitted him on the charge of gross sexual imposition. The trial court submitted the matter to the jury, but the jury found appellant not guilty of the crime. Appellant urges the burglary charge requires proving the purpose to commit a criminal offense, here, gross sexual imposition. The appellant urges because the State did not prove the gross sexual imposition, it could not prove appellant was guilty of burglary. We do not agree. The crime of burglary does not require the State prove an accused actually committed the criminal offense, but rather that accused entered with the purpose of committing the offense. Thus, the jury verdicts are not inconsistent, and there was sufficient evidence for reasonable minds to reach different conclusions as to wether the appellant entered this structure with the purpose to commit a criminal offense. Our review of the record leads us to conclude the trial court did not err in overruling the appellant's motion for acquittal. Accordingly, the second assignment of error is overruled.
 III
In his third assignment of error, appellant alleges his conviction is against the manifest weight of the evidence presented at trial. The Ohio Supreme Court has recently discussed the concept of weight of the evidence in State v. Thompkins (1997), 78 Ohio St.3d 380 . According to the Ohio Supreme Court, weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial in support of one side of the issue rather than the other. Weight of the evidence is not a question of mathematics, but rather the effect of the evidence to induce belief in the trier of fact, Thompkins at 387. An appellate court should reverse a jury's verdict on the weight of the evidence only in an exceptional case whether it is clear the jury lost its way and created a manifest miscarriage of justice, see, e.g. State v. DeHass (1967),10 Ohio St.2d 230. As stated in II, supra, we find the jury verdicts of not guilty of gross sexual imposition, but guilty of the burglary charge are not inconsistent, but can be reconciled with facts presented at trial.
For this reason, we find there was sufficient competent and credible evidence presented as to each material element of the crime charged to permit a reasonable trier of fact to conclude appellant was guilty beyond a reasonable doubt. The third assignment of error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas of Delaware County, Ohio, is affirmed, and the cause is remanded to that court for execution of sentence.
Reader, V.J., Farmer, P.J., and Edwards, J., concur